IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

U.S. SECURITIES AND EXCHANGE          )
COMMISSION,                           )
100 F Street, NE                      )
Washington, DC  20549                 )
                                      )
                        *Plaintiff,*  )
                                      )
              *-v.-*                   )
WYETH LLC                             )
Five Giralda Farms                    )
Madison, NJ  07940                    )
                                      )
                      *Defendant.*    )
                                      )

## COMPLAINT

Plaintiff, U.S. Securities and Exchange Commission (the "Commission"), alleges:

## SUMMARY

1.      This action arises from violations of the books and records and internal controls

provisions of the Foreign Corrupt Practices Act of 1977 ("the FCPA") by Defendant Wyeth LLC

("Wyeth"), while an issuer, relating to improper payments made to foreign officials in numerous

countries by the employees and agents of Wyeth's subsidiaries in order to assist Wyeth in

obtaining or retaining business.  During the time relevant to this Complaint, Wyeth was a

pharmaceutical company engaged in business throughout the world, and an issuer as that term is

used under the FCPA.

2.      At various times from at least 2005 through 2010, subsidiaries of Defendant

Wyeth conducting business in several countries, including Indonesia, Pakistan, China, and Saudi

Arabia, engaged in transactions for the purpose of improperly influencing foreign officials, including doctors and other healthcare professionals employed by foreign governments. Employees in each of the involved subsidiaries attempted to conceal the true nature of the transactions by improperly recording the transactions on the books and records of the respective subsidiaries. Examples include falsely recording the payments as legitimate expenses for promotional activities, marketing, training, travel and entertainment, conferences and advertising.

3.      These improper payments were made without the knowledge or approval of officers or employees of Wyeth, but the inaccurate books and records of Wyeth's subsidiaries were consolidated in the financial reports of Wyeth, and Wyeth failed to devise and maintain an appropriate system of internal accounting controls. Certain of these payments were made following the acquisition of Wyeth by Pfizer Inc. ("Pfizer") without the knowledge or approval of officers or employees of Pfizer, and the inaccurate books and records of Wyeth's subsidiaries regarding those payments were consolidated in the financial reports of Pfizer.

4.      As a result of this conduct, Wyeth violated Section 13(b)(2)(A) of the Securities Exchange Act of 1934 ("Exchange Act") by failing to make and keep books, records and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and disposition of assets of the issuer. Additionally, by failing to ensure that it maintained adequate internal controls to detect and prevent FCPA violations, Wyeth violated Section 13(b)(2)(B) of the Exchange Act as it failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary to

2

permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements; (iii) transactions are recorded as necessary to maintain accountability for assets; and (iv) that access to assets is permitted only in accordance with management's general or specific authorization.

5.      Following Pfizer's acquisition of Wyeth, which was finalized on or about October 15, 2009, Pfizer undertook a risk-based FCPA due diligence review of Wyeth's global operations and reported the results of that diligence review to the Commission staff within 180 days of the closing. Pfizer's post-acquisition review identified potential improper payments, and it diligently and thoroughly undertook a global internal investigation of Wyeth's operations and voluntarily disclosed the results to the Commission staff, which included identifying improper payments made by Wyeth's Nutritional Products Division in Indonesia, Pakistan, China, and Saudi Arabia, as well as additional improper payments made by other Wyeth subsidiaries. Following the acquisition, Pfizer diligently and promptly integrated Wyeth's legacy operations into its compliance program and cooperated fully with the Commission staff.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

7.      Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] or 28 U.S.C. § 1391(d).

## DEFENDANT

8.      **Wyeth** was a global pharmaceutical company headquartered in Madison, New Jersey and incorporated in Delaware.  Its securities were registered with the Commission under Section 12(b) of the Exchange Act, and its common stock traded on the New York Stock Exchange ("NYSE") under the symbol "WYE."  Wyeth and its subsidiaries conducted worldwide operations in over 145 countries, employed more than 47,000 people, and in fiscal year 2008, Wyeth's sales totaled $22.8 billion.  In connection with its acquisition by Pfizer on or about October 15, 2009, Wyeth delisted from the NYSE and became a wholly-owned subsidiary of Pfizer.

## OTHER RELEVANT ENTITIES

9.      **PT Wyeth Indonesia** ("Wyeth Indonesia") is an Indonesian company that during the relevant period was an indirect majority-owned subsidiary of Wyeth.

10.     **Wyeth Pakistan Limited** ("Wyeth Pakistan") is a publicly traded Pakistani company that during the relevant period was an indirect majority-owned subsidiary of Wyeth.

11.     **Shanghai Wyeth Nutritional Co., Ltd.** ("Wyeth China") is a Chinese company that during the relevant period was an indirect majority-owned subsidiary of Wyeth.

12.     **COCI Corporation** is a Delaware Corporation that operated a representative office in the Kingdom of Saudi Arabia ("Wyeth Saudi Arabia").

## FACTUAL ALLEGATIONS

### A.     Indonesia

13.     During the relevant period, Wyeth nutritional products were marketed in the Republic of Indonesia by Wyeth Indonesia.

4

14.     From at least 2005 until 2010, Wyeth Indonesia, through its employees and agents, provided cash payments and nutritional products to employees of Indonesian government-owned hospitals, including doctors employed by the Indonesian government.  The cash payments and products were intended to influence the doctors' recommendation of Wyeth nutritional products to their patients, to ensure that Wyeth products were made available to new mothers at the hospitals, and to obtain information about new births that could be used for marketing purposes.

15.     Wyeth Indonesia employees took steps to conceal the true nature of the payments and the provision of nutritional products, in concert with distributors and vendors, by issuing invoices and supporting documentation that failed to accurately describe the underlying transactions.

16.     Wyeth Indonesia's Ethical Nutritional Division made cash payments and provided Wyeth nutritional products, BlackBerrys, cell phones, and phone card credits to doctors and midwives who were employed by government healthcare institutions owned or controlled by the Indonesian government.  Wyeth Indonesia employees made cash payments to individual government-employed Indonesian healthcare providers based upon the continued use of Wyeth nutritional products by infants who had been provided with Wyeth products at birth.  These payments were made from funds allocated for continuing medical education events.

17.     Wyeth Indonesia employees instructed Wyeth Indonesia's distributors to generate invoices and to deliver the products, but to then charge back the value of the goods to Wyeth Indonesia so that the institutions received the products without charge.  In 2006, Wyeth's International Corporate Compliance Office ordered this practice stopped on the basis that the

accounting for the program did not comply with generally accepted accounting principles or Wyeth policies.  Notwithstanding this instruction, Wyeth Indonesia employees continued the program and concealed their reimbursement of the distributors by instructing other vendors, such as travel agencies and conference organizers, to pay the distributors and then obtain reimbursement from Wyeth Indonesia by submitting fictitious invoices, allegedly for continuing medical education events.

18.      Wyeth Indonesia employees also took steps to conceal the true nature of the transactions by inaccurately recording them as "Miscellaneous Expenses – Joint Promotions," "Medical Education - Promo," "Trade Allowances," and "Miscellaneous Selling Expenses," among other false and misleading descriptions.

**B.      Pakistan**

19.      During the relevant period, Wyeth nutritional products were marketed in the Islamic Republic of Pakistan by Wyeth Pakistan.

20.      Starting at least in 2005 and continuing into 2009, Wyeth Pakistan employees provided improper benefits to doctors who were employed by healthcare institutions owned or controlled by the Pakistani government.  These improper benefits included cash payments, travel, office equipment and renovations, and were intended to influence the doctors to recommend Wyeth products to new mothers.

21.      The improper benefits initially were funded through the submission of fictitious expense reimbursement requests by Wyeth Pakistan employees and approved by local management.  In 2008, Wyeth's external auditor performed an audit of Wyeth Pakistan and

6

identified questionable reimbursement submissions in the Nutritional Division.  As a result,

Wyeth Pakistan employees discontinued the submission of the fraudulent expense

reimbursement requests and began generating funds with the help of collusive vendors, who

submitted fraudulent invoices for printing and marketing services.  After the invoices had been

paid, the vendors provided cash to Wyeth Pakistan employees for their use in making payments

to government doctors.

22.     Wyeth Pakistan employees and local management took steps to conceal the true

nature of the transactions by inaccurately recording them as "Advertising and Sales Promotion,"

"Film Show," "Entertainment," "Product Meetings," and "Give Aways and Gifts," among other

false and misleading descriptions.

## C.     China

23.     During the relevant period, Wyeth nutritional products were marketed in the

People's Republic of China by Wyeth China.

24.     From at least 2005 through 2010 and until the conduct was stopped by Pfizer,

Wyeth China, through its employees and agents, provided cash payments to Chinese state-owned

hospitals and healthcare providers (including doctors, nurses, and midwives) employed by the

Chinese government that were intended to influence the healthcare providers' recommendation

of Wyeth nutritional products to their patients, to ensure that Wyeth products were made

available to new mothers at the hospitals, and to obtain information about new births that could

be used for marketing purposes.

25.     Wyeth China employees funded the cash payments by submitting falsified expense reimbursement requests for, among other things, meals, travel, entertainment, speaker fees (to healthcare providers who allegedly spoke at consumer education meetings), and other incidental expenses.  The reimbursement requests were either inflated or related to events or activities that did not occur, and the money generated by these falsified requests was used to make cash payments to government healthcare providers.

26.     Wyeth China employees also generated funds with the help of collusive travel agencies, which submitted false or inflated invoices for organizing large-scale consumer education events.  After the invoices had been paid, the travel agencies provided cash to Wyeth China employees for their use in making payments to government healthcare providers.

27.     Wyeth China employees took steps to conceal the true nature of the payments by falsifying expense reimbursement requests and, in concert with local travel agencies, by submitting false or inflated invoices and other supporting documentation for large-scale consumer education events, resulting in those transactions being falsely recorded in Wyeth China's books and records.

**D.     Saudi Arabia**

28.     During the relevant period, Wyeth operated in the Kingdom of Saudi Arabia through Wyeth Saudi Arabia.  During the relevant period, Wyeth's nutritional products were marketed and sold in the Kingdom of Saudi Arabia by Wyeth Saudi Arabia's local distributor.

29.     In June 2007, the local distributor, at the direction of Wyeth Saudi Arabia, made a cash payment to a Saudi Arabian customs official to secure the release of a shipment of

promotional items that were to be used in connection with the marketing and sale of Wyeth's

nutritional products.  These promotional items were held in port because Wyeth Saudi Arabia

had failed to secure a required Saudi Arabian Standards Organization Certificate of Conformity.

30.     In July 2007, Wyeth Saudi Arabia reimbursed the distributor for this cash

payment and improperly recorded it as a "facilitation expense" in its books and records.

**E.     Accounting and Internal Controls**

31.     As described above, Wyeth Indonesia, Wyeth Pakistan, and Wyeth China

engaged in transactions which were intended to improperly influence foreign government

officials.  Through these three subsidiaries Wyeth earned aggregate profits of approximately

$17,217,831 as a result of these improper transactions.

32.     As described above, during the relevant period, the Wyeth subsidiaries recorded

transactions associated with the improper payments in a manner that did not accurately reflect

their true nature and purpose.  False entries in the subsidiaries' books and records were

consolidated into the books and records of Wyeth, which reported the results of its subsidiaries'

operations in its consolidated financial statements.

33.     As described above, during the relevant period, Wyeth failed to devise and

maintain an effective system of internal controls sufficient to prevent or detect the above-

described conduct.

## CLAIM FOR RELIEF

### (Company Books and Records and Internal Controls)

34.     Paragraphs 1 through 33 are realleged and incorporated herein by reference.

35.     Section 13(b)(2)(A) of the Exchange Act requires issuers to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of their assets.

36.     Section 13(b)(2)(B) of the Exchange Act requires issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions are executed in accordance with management's general or specific authorization; transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements; transactions are recorded as necessary to maintain accountability for assets; and that access to assets is permitted only in accordance with management's general or specific authorization.

37.     By reason of the foregoing, Wyeth violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and (B)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

A.   Permanently enjoining Wyeth from violating, or aiding and abetting violations of, Sections 13(b)(2)(A) [15 U.S.C. §78m(b)(2)(A)] and 13(b)(2)(B) [15 U.S.C. §78m(b)(2)(B)] of the Exchange Act;

B.   Ordering Wyeth to disgorge all ill-gotten gains wrongfully obtained as a result of the illegal conduct described herein, plus prejudgment interest.

Respectfully submitted,

Nancy Ellen Tyler (Texas Bar No. 20358600)
Kara N. Brockmeyer
Charles E. Cain
Michael K. Catoe

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street, NE
Washington, DC  20549
Telephone:   (202) 551-4193 (Tyler)
Facsimile:   (202) 772-9291 (Tyler)
E-mail:        tylern@sec.gov
                  brockmeyerk@sec.gov
                  cainc@sec.gov
                  catoem@sec.gov

Dated:  August 7, 2012